Lois UNDERWOOD, Appellant,

v.

JEFFERSON MEMORIAL HOSPITAL, Appellee.

No. 80–1114.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1980.

Decided Feb. 5, 1981.

Raymond Howard, St. Louis, Mo., for appellant.

D. Michael Linihan, St. Louis, Mo., for appellee.

Before ROSS and HENLEY, Circuit Judges, and RENNER,* District Judge.

RENNER, District Judge.

Lois Underwood, plaintiff-appellant, brought this employment discrimination action, contending that her termination by the defendant-appellee, Jefferson Memorial Hospital, was racially motivated in violation of 42 U.S.C. §§ 2000e *et seq.* and 42 U.S.C. § 1981. Following a one day bench trial, the district judge[1] found that Underwood failed to establish a prima facie case of racial discrimination. Judgment was entered in favor of the hospital. 484 F.Supp. 1040. Underwood appeals. We affirm.

On appeal, appellant argues that the district court's finding that she had failed to establish a prima facie case of discrimination is clearly erroneous in light of the evidence produced by her at trial. Stripped

---

* The Honorable Robert G. Renner, United States District Judge, District of Minnesota, sitting by designation.

1. The Honorable William Hungate, United States District Judge for the Eastern District of Missouri.

to its essentials, her argument is that, in determining whether a prima facie case of disparate treatment has been established, only evidence submitted by the plaintiff should be considered.

 Such argument has been consistently rejected by this Court. We have stated that in determining whether a prima facie case has been established, the district court need not ignore the defendant's evidence of nondisparate treatment. Prima facie evidence means the "net of the evidence"; that is, the court must consider the evidence presented by both parties. *Henry v. Ford Motor Co.*, 553 F.2d 46, 48–49 (8th Cir. 1977). If all the evidence leaves the court convinced that there has been disparate treatment based on race, then the burden shifts to the defendant to show that the differing treatment was based on valid reasons other than race. *Id. See also Mosby v. Webster College*, 563 F.2d 901 (8th Cir. 1977).

At trial, Underwood, a black woman, contended that she was treated differently, with respect to maternity leave requirements, than similarly situated white employees.

 In a case alleging disparate treatment, plaintiff must prove: "(1) differences in treatment, and (2) a discriminatory motive on the part of her employer." *Meyer v. Missouri Highway Commission*, 567 F.2d 804, 807 (8th Cir. 1977), citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also McCosh v. City of Grand Forks*, 628 F.2d 1058 (8th Cir., 1980). Based upon the "net of the evidence", the district court's conclusion that plaintiff failed to meet this burden is not clearly erroneous.

Hospital policy mandated that, except in emergency situations, a leave of absence

form was to be completed by an employee prior to commencement of maternity or sick leave. Leave was unauthorized if such form was not completed. Hospital policy further provided for the automatic termination of offending employees after two days of unauthorized absence.

In the weeks preceding the birth of her child, Underwood met, on several occasions, with her supervisor and, once, with hospital administrator, Andrew Talley, to discuss hospital leave policy. It was her testimony that she refused to sign the form because she had been told that her leave would be limited to six weeks and that she could not be assured of a position in her department immediately upon return to work.

On April 4, 1978, after Underwood went to the hospital on March 31, to have her baby, Andrew Talley sent her a letter, restating the leave and termination policy. Again he informed her that, unless she returned a completed leave form by April 11, 1978, her leave would be deemed unauthorized. Ignoring the advice Underwood failed to complete the form. Thereafter, in accordance with hospital policy, she was terminated.

The evidence is clear that all employees were required to complete the form, except in emergency situations where physically unable to sign. Here, there was no such emergency situation. On at least five occasions appellant was asked to sign the necessary leave form.

There is no evidence that the policy was applied in a discriminatory manner.[2] In fact, four white employees were terminated for unauthorized absences in accordance with the policy. There has been no showing that white employees were not similarly treated for similar violations.

Appellant's testimony that she was told that her leave would be limited to six weeks and that she could not be assured of her

**2.** Although we are unable to discern support in the record for the district court's finding that both black and white employees were granted leave without signing leave of absence forms, the essential and dispositive finding was that

the policy was not applied in a discriminatory manner. That finding is not clearly erroneous. F.R.Civ.P. 52(a); *Delois Martin v. The Arkansas Arts Center*, 627 F.2d 876 (8th Cir., 1980).

former position upon return were disputed by hospital witnesses. The district court's determination of no discrimination necessarily resolved credibility issues adversely to plaintiff. Such credibility determinations are the special province of the trier of fact. *See Stanley v. Henderson*, 597 F.2d 651 (8th Cir. 1979).

■ The judgment of the district court is affirmed.[3]

**3.** On appeal, the hospital seeks double costs and damages pursuant to Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912, contending that Underwood frivolously prosecuted this appeal. While it is true that the single argument advanced by plaintiff on appeal is meritless, this Court finds that costs and damages are not justified. Appellant did argue at hearing that one finding of the district court was not supported by the evidence. Additionally, Rule 11 of this Circuit's supplemental rules of appellate procedure provides for typewritten briefs, reproduced by photocopying, in lieu of printed briefs. We should be cautious in taxing costs and damages in cases such as this where an appellee responds to a typewritten brief with a printed one.