George WALKER, Appellant,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Appellee.

No. 82–1467.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1983.

Decided Feb. 10, 1983.

Rehearing and Rehearing En Banc Denied March 16, 1983.

Richard Quiggle, Little Rock, Ark., for appellant.

Charles Lister, Jeffrey G. Huvelle, Covington & Burling, Washington, D.C., for appellee; James McHaney, Jr., Owens, McHaney & Calhoun, Little Rock, Ark., Richard J. Sweetnam, Armonk, N.Y., of counsel.

Before ROSS and FAGG, Circuit Judges, and BEAM,* District Judge.

ROSS, Circuit Judge.

Appellant George Walker, a black male, brought suit against appellee, IBM Corporation, alleging that IBM had engaged in discriminatory employment practices in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Following a bench trial, the district court found that a prima facie case was made by Walker; however, the case was rebutted by IBM's articulation of a legitimate nonpretextual justification for the termination of Walker. Accordingly, judgment was entered in favor of IBM. On appeal, we affirm.

Walker came to IBM in June of 1967, and worked for four years as a systems engineer in the Data Processing Division's office in Little Rock, Arkansas. In December of 1971, Walker was transferred to a marketing position in the Office Products Division. In this position, Walker's job involved the sale of a large variety of IBM equipment. In August 1973, Walker was promoted to sales representative, and in January 1974, he was promoted to account representative. Walker held this position until his termination in August of 1978.

It is undisputed that Walker's performance was satisfactory through 1975; however, at that time, it appears that his performance began to deteriorate. IBM has what is known as an "open door" policy: that is, any employee with a complaint can bring it to the attention of management at any level. In late 1976, Walker complained to his manager, Bob Jones, that he was not getting enough sales support from his marketing manager and that racial discrimination was occurring within the Little Rock branch. Upon investigation, Jones found no basis for Walker's claim of racial discrimination. Jones did conclude that Walker's perception of his marketing manager's lack of support could be an obstacle to effective performance. Therefore, Jones transferred Walker to another sales team under the direction of marketing manager, Tommy Anderson. Because this transfer took place in November, Walker's 1976 evaluation was prepared by his former marketing manager. That evaluation was the worst of Walker's career.

During the course of 1977, Walker claimed that he experienced difficulty with Anderson; specifically, a lack of support and disagreement over sales methods. Walker alleged that this was due in large part to his use of the "open door" policy which predicated his transfer into Anderson's department. In March of 1978, Walk-

* The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska, sitting by designation.

er filed charges with the Equal Employment Opportunity Commission alleging racial discrimination. Walker claims that after he filed these charges, Anderson made his life at work more difficult. Walker then filed retaliation charges with the EEOC on May 29, 1978.

IBM's regional manager in Kansas City, Clyde Campbell, then met with Walker to discuss the situation. Walker described his problems to Campbell at a meeting in Kansas City. Following an investigation, Campbell told Walker that he found no basis for Walker's allegations of race discrimination, but Campbell stated that if Walker was still not satisfied he should continue to pursue his EEOC charges.

On June 14, 1978, Walker was told that his performance must improve or he would be terminated. However, before Walker could be evaluated after his 1978 "warning," Walker violated one of IBM's "Rules of Business Conduct," and was terminated. The IBM rule involved was known as the "firm order" rule. Basically, it requires that a salesperson not process any order if a customer has implied in any way that the order is not yet firm. Further, it requires a salesperson to notify the company if an order becomes "unfirm." IBM alleges that Walker was guilty of a number of rules violations, but the most serious violation arose under this "firm order" rule, a violation which, under the rules, warrants an employee's termination. The trial court found that Walker was aware of the fact that a customer had no authority to order a machine, but went ahead and processed the sale anyway. The order was then cancelled but Walker did not notify his superior that it had been cancelled. He had earlier collected his commission on the sale. Walker was terminated in August 1978, after regional manager Clyde Campbell reviewed the report on Walker's rules violations. In November 1978, Walker filed suit under Title VII, but that case was voluntarily dismissed on April 28, 1980. In August 1981, the instant action was filed under 42 U.S.C. § 1981. The trial court issued oral findings of fact and conclusions of law on March 11, 1982. Judgment was then entered in favor of IBM. This appeal followed.

It is well established that the order and allocation of proof as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), are applicable to an action brought under 42 U.S.C. § 1981. *Person v. J.S. Alberici Construction Co.,* 640 F.2d 916, 918 (8th Cir. 1981). The Supreme Court set out the test to be applied in these circumstances in the recent case of *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), where it stated:

> In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802 [93 S.Ct. at 1824]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804 [93 S.Ct. at 1825].

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

In this case, the trial court found that Walker had made out a prima facie case of discrimination since his discharge occurred only five months after the filing of EEOC charges. The burden of produc-

tion then shifts to IBM to show a legitimate, nondiscriminatory reason for Walker's discharge. This burden was met by IBM, the trial court held, when it showed that Walker's termination was based on his violation of the "firm order" rule. A violation of a company rule can constitute a legitimate, nondiscriminatory reason for the discharge of an employee. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir.1981). The trial court found that Walker did not carry his burden of persuasion on the issue of pretext and, therefore, denied recovery.

Walker argues, on appeal, that the trial court erred in ruling that the discharge for rules violations was not a pretext for unlawful race discrimination. In support of this argument, Walker points to his treatment in years prior to his termination, the "racial" atmosphere of the office, and his treatment by his supervisors subsequent to using the "open door" grievance procedure.

The findings of fact of the trial court are not to be set aside unless they are clearly erroneous. *See* Rule 52(a) of Federal Rules of Civil Procedure. We are unable and unwilling to hold that the district court's findings of fact were clearly erroneous in this case. The record is replete with evidence that Walker was discharged for his violation of company rules. We do not find that the district court erred in holding that Walker was discharged for lawful reasons. For the foregoing reasons, the judgment of the district court is affirmed.